## UNION TRUST CO. *v.* TIGHE.

1. EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.

Broker's loose leaf ledger record kept at its head office showing transactions in certain stock, and from which it appeared that certain stock was received from its branch office in another city for defendant's account, *held*, not admissible in evidence in support of plaintiff's claim that defendant executed to its decedent alleged lost note to pay for said stock, where those making said entries had no personal knowledge of said transaction in branch office, and therefore its receipt, under circumstances, constituted reversible error.

2. SAME—BANK'S LEDGER SHEETS—ADMISSIBILITY.

Bank's ledger sheets showing that, on five occasions substantially on date semi-annual interest on mortgage executed by plaintiff's decedent fell due, check for exact amount on defendant's

---

As to admissibility of books of account, see 52 L. R. A. 552, 581.

account was paid by bank, *held*, admissible in support of plaintiff's claim that decedent executed said mortgage for benefit of defendant, and was adjusted by latter executing alleged lost note.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted January 13, 1932. (Docket No. 133, Calendar No. 36,239.) Decided April 4, 1932. Rehearing denied June 6, 1932.

Assumpsit by Union Trust Company, a Michigan corporation, administrator of the estate of Fred H. Tighe, deceased, against Edward H. Tighe on an alleged promissory note. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and a new trial ordered.

*Prentis, Fitch & Carpenter,* for plaintiff.

*Bishop & Weaver,* for defendant.

NORTH, J. Plaintiff, as administrator of the estate of Fred H. Tighe, deceased, brought suit on an alleged lost promissory note for $8,400 which plaintiff claims defendant gave to its decedent November 23, 1920, the note being payable one year after date. Defendant pleaded the general issue and made sworn denial of execution and delivery of the note. The jury found for plaintiff, judgment was entered accordingly, and defendant has appealed.

The appeal is based wholly upon claimed error committed by the court in receiving certain exhibits in evidence. Admissibility of these exhibits must be determined in the light of other facts disclosed by the record. Decedent and defendant were brothers, decedent being about two years defendant's junior. They had been in the furniture manufacturing business together for many years prior to 1914, when

they disposed of the same. From 1920 to 1925 they lived together in defendant's home at Plymouth, Michigan. Beginning about 1916 each of the brothers traded in stocks with various brokerage houses in Detroit. The defendant and his wife had a joint commercial account in the Plymouth Savings Bank; and from 1920 on plaintiff's decedent and his wife had authority to draw checks on defendant's joint account, and did draw numerous checks on that account, especially during the winter months of each year while defendant and his wife were residing in California.

On November 23, 1920, decedent and his wife gave a mortgage for $8,400 to Robert O. Mimmack, payable one year from date with interest at the rate of seven per cent. per annum, payable semi-annually, the mortgage covering a house owned by the mortgagors. The consideration was 100 shares of New York Central Railroad stock delivered by Mr. Mimmack either to defendant or to plaintiff's decedent. It is claimed by plaintiff that this stock was obtained for defendant's benefit and was credited to his brokerage account on the books of E. W. Wagner & Co., a Chicago brokerage house having a branch office in Detroit, with which branch office each of the brothers traded frequently. It is plaintiff's claim that defendant gave the lost note to decedent in adjustment of the above transaction as between themselves. Mr. Fred Tighe died January 30, 1925; and on August 12, 1926, this suit was commenced to recover on the alleged note.

At the trial Mary C. Tighe, widow of plaintiff's decedent, testified to the execution of the mortgage above mentioned, and, further, that on the same day her husband displayed to her the note on which this suit is brought, saying: "Here is Ed's note for the

$8,400.'' She also testified that on several occasions after her husband's death she mentioned the note to the defendant, informed him that she could not find it among her husband's papers, and finally defendant, at least inferentially, admitted the note had been executed but claimed that his brother Fred had destroyed it. This testimony was denied by defendant, who asserted that he had never executed or delivered the alleged note.

As bearing upon the controverted issue as to whether or not the Mimmack New York Central stock was secured as a marginal protection for the benefit of defendant's brokerage account with E. W. Wagner & Co., plaintiff offered and the court received in evidence the following exhibits:

(1) Exhibit A, a stock register sheet kept in the Chicago office of E. W. Wagner & Co.

(2) Exhibits 16 to 19 inclusive, which were loose leaves from the ledger accounts kept in the same office purporting to show the state of defendant's account during the period covered.

(3) Exhibits 55 to 60 inclusive, the same being bank ledger sheets of the Plymouth United Savings Bank showing the state of defendant's bank account during the period covered by this controversy.

(1) Exhibit A was the broker's loose leaf ledger record of the New York Central stock received by it from various customers. From this record it appeared that on November 16, 1920, E. W. Wagner & Co. received from E. H. Tighe 100 shares of New York Central stock which stood in the name of Robert O. Mimmack. This item was the only part of the exhibit received in evidence by the trial judge. If the entry was competent it was evidence in support of plaintiff's claim that the Mimmack mortgage

transaction was for defendant's benefit. Objection to Exhibit A was urged on the ground that the entry was not made in the presence of defendant, that it was a mere entry of a single transaction, not a book account or an account of defendant, that it was not an original entry or made by one having personal knowledge of the transaction, and on various other grounds. The Chicago office manager of E. W. Wagner & Co., a witness for plaintiff, testified that the New York Central stock certificate was received in the mail by the Chicago office, that the witness had actual possession of the certificate, that he personally supervised the book entry of its receipt, and that the record was an original entry of such receipt. It conclusively appears that no one in the Chicago office had any personal knowledge of the transaction in the Detroit branch. Yet this entry purported to sustain plaintiff's claim that the Detroit broker received this certificate of New York Central stock from defendant or at least for the benefit of defendant's account. That was the controverted issue on this phase of the case. The ledger entry made by strangers in the Chicago office was clearly incompetent.

The trial judge seems to have held Exhibit A admissible on the theory that its contents were brought to defendant's attention by statements of his account sent him from the Chicago office, and that the correctness of the entry was not thereafter challenged by defendant. The reasoning does not apply to the facts in this case because this entry at the time was in no way adverse to defendant's interest. If it was erroneous it was so because it gave defendant's account credit for an item which in fact should have been credited to his brother's account. Therefore, the presumption does not arise, even if it

otherwise would, that he would have denied the correctness of the entry if it were false in fact.

"The test of admissibility is found in whether the circumstances are such that in the ordinary practice of mankind the party receiving the letter would have answered it if he did not acquiesce in the statements contained therein." 22 C. J. p. 326.

That the jurors gave this exhibit serious consideration and were influenced by it is quite clearly indicated by the fact that during the course of their deliberations they asked to have it submitted to them for inspection, and this request was granted. In a case as close as this on the controverted controlling facts, we think the receipt of Exhibit A in evidence constituted reversible error.

(2) Exhibits 16 to 19 inclusive were loose leaves from the ledger accounts kept in the Chicago brokerage office purporting to show the state of defendant's account at the time of the entries. The difficulty is these exhibits did not cover or relate in any way to defendant's business with the brokerage agency during November, 1920, the month in which the transaction giving rise to this suit was alleged to have occurred; nor do these exhibits contain any entry relating to the 100 shares of the New York Central stock. They were wholly irrelevant and immaterial to the controverted issues. Since there is to be reversal on other grounds we need not determine whether this ruling of itself constituted reversible error.

(3) Exhibits 55 to 60, inclusive, were bank ledger sheets of the Plymouth United Savings Bank, which purported to show the state of defendant's bank account during the period in controversy. In offering these ledger entries plaintiff's purpose was to prove that on five occasions substantially on the date semi-annual interest in the amount of $294 fell due

on the Mimmack mortgage a check for that exact amount on defendant's account was paid by the bank. This plaintiff urged tended to prove that its decedent gave the Mimmack mortgage for defendant's benefit, and, further, that this is the transaction which was adjusted between the brothers by defendant giving decedent the alleged lost note. Plaintiff had given defendant notice to produce his canceled checks; but defendant denied possession of the checks or that they had been received by him from the bank. There was testimony that the bank made monthly statements to depositors which reflected the items in their respective ledger accounts. An assistant cashier, a witness for plaintiff, testified relative to the ledger accounts:

"I know of my own knowledge that these are the true records of the bank regularly kept in the course of business, that they show all the transactions in reference to this account during the periods you have mentioned."

In objecting to these exhibits it is pointed out by defendant that the proof does not disclose by whom the checks were signed, or to whom they were payable, and that the record does disclose there were three other persons possessed of the right to draw checks on defendant's account. These circumstances, we think, only go to the weight of the testimony and not to its admissibility. The rather striking coincidence in the dates and amounts of these items as related to interest payments due on the Mimmack mortgage clearly gives the entries evidentiary force. This ruling of the trial court was correct.

The judgment of the circuit court is reversed, and a new trial ordered.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.